IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


MILTON R. MURRAH,
    Petitioner,

vs.                                    Case No.: 5:03cv140/MMP/EMT

JAMES R. McDONOUGH,[1]
    Respondent.
_____/

**ORDER AND
REPORT AND RECOMMENDATION**

    Petitioner initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed a response to the petition (Doc. 7), and Petitioner filed a traverse (Doc. 24).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be denied.

I.    BACKGROUND AND PROCEDURAL HISTORY

    Petitioner does not dispute the procedural background as set forth by Respondent (*see* Doc. 24).  Following a jury trial in the Circuit Court in and for Hamilton County, Florida, Case No. 93-148-CF, Petitioner was found guilty of two counts of lewd and lascivious conduct and two counts of capital sexual battery (Doc. 7, Ex. B).  He was sentenced to terms of ten years of incarceration on the lewd and lascivious counts and terms of life imprisonment on the sexual battery counts (*id*., Ex. C).  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeals ("First DCA").  On May 21, 1998, the First DCA affirmed per curiam without opinion (*id.*, Exs. D,

---

[1] James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

E). Murrah v. State, 719 So.2d 291 (Fla. 1st DCA May 21, 1998) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On February 25, 1999, Petitioner filed with the trial court a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 7, Ex. O at 1-14). The trial court denied the motion on July 23, 1999 (*id*. at 15-16). Petitioner appealed the decision to the First DCA. The appellate court reversed and remanded to the trial court (*id*. at 27-32). Murrah v. State, 773 So.2d 622 (Fla. 1st DCA Dec. 12, 2000). Upon remand, the trial court again denied the post-conviction motion (*id*. at 33). On October 31, 2000, Petitioner filed a motion for belated appeal of the order denying his motion for postconviction relief (Doc. 7, Ex. F). The First DCA granted the motion (Doc. 7, Exs. G, H). Murrah v. State, 806 So.2d 594 (Fla. 1st DCA Feb. 1, 2002). The appellate court affirmed the decision denying Petitioner's post-conviction motion, with the mandate issuing April 7, 2003 (Doc. 7, Exs. K, N).

Petitioner filed the instant habeas action on May 27, 2003 (Doc. 1 at 7). Petitioner asserts a single ground for relief:

> Ground one: The Petitioner has obtained newly discovered evidence which was not available at trial and establishes Petitioner's actual innocence, and that his conviction was obtained in violation of the Due Process Clause (14th Amendment, U.S. Constitution).

(Doc. 1 at 5.1). In his supporting facts, Petitioner asserts that the State knowingly used perjured testimony at trial and withheld evidence from the defense, in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*id*. at 5.4). Petitioner contends that even if violations of Giglio and Brady are not established, his conviction violates due process because he is actually innocent of the crimes for which he was charged and convicted (*id*. at 5.6).

Respondents contend Petitioner failed to exhaust his state court remedies with regard to his Giglio and Brady claims, as required by 28 U.S.C. § 2254, and Petitioner is now procedurally barred from raising his claims in the state courts (Doc. 7 at 11-12). Furthermore, to the extent Petitioner attempts to assert an independent claim of actual innocence based upon newly discovered evidence, the claim is not cognizable on federal habeas review (*id*. at 14-15). Moreover, Petitioner has failed to show that the state court decision denying his claim of newly discovered evidence was contrary to or an unreasonable application of Supreme Court law (*id*. at 15-17).

II.     EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. Picard, 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks

---

[2]Section 2254 provides, in pertinent part:

  (b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A) the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i) there is an absence of available State corrective process; or
          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
  (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365-66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. *See*, *e.g.*, Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position). However, after Duncan, the Eleventh Circuit has taken a more restrictive approach. For example, in Zeigler v. Crosby, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

Case No.: 5:03cv140/MMP/EMT

misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. O'Sullivan, 526 U.S. at 839-40, 848. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of

justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claim.

### III. LEGAL ANALYSIS

Respondent contends Petitioner failed to exhaust his federal claims in the state courts. In response, Petitioner admits that he did not include "the magic words of a due process violation" in his state post-conviction motion in which he asserted his claim of actual innocence based upon newly discovered evidence (Doc. 24 at 3). Additionally, he concedes he did not cite Brady or Giglio, or any other federal law, in his state post-conviction motion because Rule 3.850 provides that defendants state only facts, without citing legal authority, and the state courts are presumed to know the law and apply it to the facts (*id.*).

Petitioner presented his claim of newly discovered in the state court as follows:

> Ground Five: Trial court should conduct a hearing into newly discovered evidence which was not available at trial.
>
> On March 20, 1996, trial court judge issued an order to appoint Attorney K.N. "Sonny" Scaff, Jr., to review a videotape of a recantation, of the testimony of the state's two main witnesses, who were the alledged [sic] victims in this case. A copy of the recantation tape was furnished to the trial court, the chief judge of this circuit, and defense counsel.
>
> This tape was made after the jury findings and during defendant's direct appeal. Present during the taped session were the following persons:
>
> 1. Mr. William Mitchell (family friend)
>    P.O. Box. 1326
>    Jasper, FL  32052
>
> 2. Mr. Wayne Mitchell (family friend)
>    Jasper, FL
>
> 3. Mr. John Murrah (brother of victims)
>    712 W. Jefferson St. #20
>    Brooksville, FL  34601

> 4. Mr. Steven (Murrah) Densmore (brother of victims)
> Live Oak, FL
>
> 5. Caroline Murrah (mother of victims)
> Address unknown
>
> 6. Two witnesses, the alleged victims
> J.M and M.M.
>
> On May 8, 1996, the attorney appointed by this court recommended this honorable court to "immediately grant Mr. Murrah (the defendant) a new trial." The very least, an evidentiary hearing into this situation.

(Doc. 7, Ex. O at 11-12). Petitioner submitted the videotape of the alleged recantation in support of his claim.

Initially, Petitioner's contention that he believed he should include only facts, and not legal authority, to support his claims in his state post-conviction motion is belied by the fact that he referred to legal authority in his other grounds for relief. For example, in his other grounds, Petitioner referred to his right to "a competent and constitutionally effective attorney," (*see* Doc. 7, Ex. O at 4), the "Frye" rule, (*id*. at 5), and the legal rule that motions for judgment of acquittal be specific as to the grounds for the motion (*id*. at 7). Nowhere in Petitioner's state post-conviction motion did he mention facts suggesting that the State withheld evidence from the defense or that the prosecutor knowingly presented false testimony, and he in no way referred to the federal constitutional issues raised in his federal habeas petition. Thus, the undersigned concludes that Petitioner failed to exhaust his state court remedies with respect to his claims that the State withheld evidence from the defense and knowingly presented false testimony. As any attempt on Petitioner's part to return to state court to raise these claims would be barred as untimely and successive, Petitioner is deemed to have procedurally defaulted these claims.

Petitioner does not allege that an external impediment prevented him from presenting the federal constitutional nature of his claim to the state court when he had the opportunity to do so. Indeed, the fact that the videotaped recantation was produced while his direct appeal was pending shows that the factual basis for his claim was available during the direct appeal and post-conviction process. Thus, Petitioner cannot meet the cause and prejudice standard to overcome his default. Although Petitioner contends he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar by relying on the alleged "newly discovered evidence" of the victims' recantation, he falls far short of making the showing required by Schlup.

Petitioner alleges that while the direct appeal of his conviction was pending, the victims, his twin daughters, recanted their abuse allegations, stating: (1) Petitioner never "molested" them, (2) child welfare workers told them that if they (the victims) stated that Petitioner molested them, they would be taken to Disney World, Six Flags, and any place they wanted to go for a week long

Case No.: 5:03cv140/MMP/EMT

vacation, and they would get anything they wanted, (3) child welfare workers told them that if they were lying, they (the victims) would be put in jail, (4) when they were first questioned by child welfare workers, they denied that Petitioner molested them, and (5) the reason they told child welfare workers that Petitioner molested them was so the workers would quit "bothering" them (*see* Doc. 22, Transcript of Videotaped Session). The alleged recantations were recorded on a videotape by a family friend. Respondent submitted the videotape and a transcript thereof to this court (*see* Doc. 22).

The videotaped recantation does not bear sufficient indicia of reliability to support a credible claim of actual innocence. Initially, unlike the victims' testimony during Petitioner's trial, there is no indication that the victims' statements during the videotaped session were sworn by a person authorized to administer an oath.[4] Also weighing against the reliability of the recantations is the fact that at least once during the videotaped session, the recorder was turned off and restarted (*id*. at 26). Additionally, the session was attended only by persons who the then-14-year-old victims knew were supportive of Petitioner and disbelieved the sexual abuse allegations. The videotaped session was conducted by Mr. William Mitchell, who Petitioner identifies as a "family friend." Also present were Mr. Mitchell's brother, who Petitioner also identifies as a "family friend," the victims' brother, Steve Densmore, who testified for the defense at Petitioner's trial, and Steve Densmore's wife, Rose Densmore (*id.* at 2, 25-26).[5]

Petitioner mentioned Mr. Mitchell in his trial testimony. At the time of trial, Petitioner had been detained for approximately twenty-two months (Doc. 7, Ex. O at 522). Petitioner testified that during his incarceration, he became an "outside trustee" and worked for Mr. Mitchell for approximately a year doing maintenance work on county buildings (*id*. at 523-24). He testified that prior to his incarceration, he worked at a feed mill (in the videotaped session, Mr. Mitchell referred to a time when Petitioner "worked for me some at the mill") (*id*. at 516). The transcript of the

---

[4]Florida Statutes section 92.50 provides, in relevant part:

**92.50. Oaths, affidavits, and acknowledgments; who may take or administer; requirements**

**(1) In this state**.--Oaths, affidavits, and acknowledgments required or authorized under the laws of this state (except oaths to jurors and witnesses in court and such other oaths, affidavits and acknowledgments as are required by law to be taken or administered by or before particular officers) may be taken or administered by or before any judge, clerk, or deputy clerk of any court of record within this state, including federal courts, or before any United States commissioner or any notary public within this state. The jurat, or certificate of proof or acknowledgment, shall be authenticated by the signature and official seal of such officer or person taking or administering the same; however, when taken or administered before any judge, clerk, or deputy clerk of a court of record, the seal of such court may be affixed as the seal of such officer or person.

[5]Petitioner states that Caroline Murrah, the mother of the victims, and John Murrah, a brother of the victims, were present during the videotape, however, the transcript shows that neither of those persons was present (Doc. 22, Transcript at 2, 25-26).

Case No.: 5:03cv140/MMP/EMT

videotaped session conducted by Mr. Mitchell shows that the victims remembered seeing Mr. Mitchell at an apartment where they lived with Petitioner during the time of the abuse (Doc. 22, Transcript at 2-3). During the videotaped session, Mr. Mitchell described his longstanding relationship with Petitioner and clearly indicated his belief that Petitioner did not commit the sexual offenses of which he was accused and convicted, as evidenced by the following statement at the end of the session:

> MR. MITCHELL: Well, I am glad you all have come forth. Like I said, I worked with your dad for over a year now or nearly two years and he is the meekest, mildest, gentle person I have had to deal with of all the trustees that come up to the courthouse and work with me. I never, ever had to worry about your father.
>
> I never had to look over my shoulder to see if he was going to leave, I never had to worry about him. Whatever he told me, I am giving this as a testimony to Milton. I knew him before, you all remember he worked for me some at the mill and he worked for me, like I say, for the County, I guess over a year, he worked with me, possibly two years, I can't be precise about that. Every day even on weekends. I got him out seven days a week and I got to know your dad real well and then this came down if anybody is interested, this is why I am still involved in it, this is why I am interested in seeing that the truth is being told. I could not believe that this mild mannered man could possibly do these horrible things that he has been accused of. So that is why I am asking you all to make this statement.

(*id.* at 31). From this statement, as well as Mr. Mitchell's statement at the beginning of the videotape, "What I asked you all, the story that you all told concerning Milton [Petitioner], . . . would you all like to recant it, or would you all like to tell us another story?" (*id*. at 3), it is clear that Mr. Mitchell asked the victims to make the videotaped statement.

Steve Densmore, the victims' brother, testified as a defense witness at Petitioner's trial. He testified that he lived with Petitioner and the victims when the alleged abuse occurred (Doc. 7, Ex. O at 477-78). He stated his bedroom shared a common wall with the victims' bedroom, and if someone tapped on the wall in one bedroom, you could hear it in the other (*id*. at 477). He also stated his bedroom door was two or three feet from the roll-away bed his parents slept on in the livingroom, and when someone was outside his bedroom door, he could hear them speak (*id*. at 478). Steve testified that despite the victims' testimony that they screamed when Petitioner molested them, he never heard them scream (*id*. at 481). Additionally, he testified he never saw Petitioner inappropriately touch the victims (*id*. at 479). Steve also contradicted the testimony of the victims that he knew about the abuse (*id*. at 475, 241-42, 348).

The fact that the victims were only 14 years old at the time of the videotaped session, that they were questioned by someone who they knew disbelieved their abuse allegations, and that the other persons in attendance had testified in support of Petitioner, weighs against the reliability of the recantations. In light of the unreliable circumstances of the videotaped recantation, the

undersigned concludes that Petitioner has failed to make a colorable showing of actual innocence. Therefore, this court is precluded from reviewing Petitioner's <u>Brady</u> and <u>Giglio</u> claims.

Additionally, to the extent Petitioner argues that his claim of actual innocence based upon newly discovered evidence is subject to federal habeas review independent of any claim of constitutional error, his contention is without merit. In addressing a similar claim of actual innocence, the United States Supreme Court articulated the context in which such claims come before a federal habeas court:

> A person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. Other constitutional provisions also have the effect of ensuring against the risk of convicting an innocent person. . . . All of these constitutional safeguards, of course, make it more difficult for the State to rebut and finally overturn the presumption of innocence which attaches to every criminal defendant. But we have also observed that "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." <u>Patterson v. New York</u>, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). To conclude otherwise would all but paralyze our system for enforcement of the criminal law.
>
> Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.
> . . . .
> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact.
> . . . .
> Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

<u>Herrera v. Collins</u>, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993) (citations omitted).

In the instant case, Petitioner argues he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect. However, the fundamental miscarriage of justice exception applies only where Petitioner "<u>supplements</u> his constitutional claim with a colorable showing of factual innocence," not where Petitioner makes a freestanding claim of actual innocence. <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality opinion) (emphasis added); *see also* <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1065 (11th Cir. 2002) (petitioner alleged no independent constitutional violation relating to trial witness' recantation, therefore, he was not entitled to federal habeas relief). Thus, to the extent Petitioner asserts a claim of actual innocence independent of any claim of constitutional error that occurred at his trial, he has failed to state a cognizable claim.

For the aforementioned reasons, it is **ORDERED**:

Case No.: 5:03cv140/MMP/EMT

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James Crosby as Respondent

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 6th day of March 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**